**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

**JEFFREY PARKER,** on behalf of herself and all others similarly situated,

Plaintiff,

**-v.-**

**CULT GAIA, LLC,**

Defendant.

-------------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff JEFFREY PARKER, ("Plaintiff" or "Mr. Parker") individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant, ("CULT GAIA" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*., the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 *et seq.*, arising from Defendant's failure to ensure that its ecommerce Website, www.cultgaia.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff, **JEFFREY PARKER**, is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Parker suffers from Retinitis Pigmentosa, a severe and progressive retinal disease that has caused significant and irreversible damage to his vision. His treating optometrist, Dr. Claudette Lomonaco**,** confirms that Mr. Parker, "[i]s legally blind due to Retinitis Pigmentosa," that his condition "meets the criteria for legal blindness under both State and Federal standards," and that he "should be afforded all privileges and accommodations available to those who are legally blind." (See **Ex. A – Jeffrey Parker Medical Report**)

2. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies

upon keyboard navigation and accessible website functionality to browse, understand, and interact with digital content. Because Plaintiff cannot independently perceive information presented solely through visual means, he depends upon websites being designed, constructed, and maintained in a manner compatible with the assistive technology necessitated by his disability. Meaningful alternative text properly identified interactive controls, descriptive links, accessible navigation, and information that can be recognized and communicated by screen-reading software are essential to Plaintiff's ability to independently access and utilize digital content.

3. As a blind consumer, Mr. Parker relies exclusively on screen-reading software — including NonVisual Desktop Access ("NVDA") — and keyboard-only navigation to browse websites, read product information, select sizes, compare options, and complete online purchases. Screen-reading software converts digital content into synthesized speech or refreshable Braille, enabling blind users to navigate websites independently. For this technology to function, websites must be properly coded to provide meaningful alternative text for images, programmatically determinable labels for interactive controls, descriptive link text, logical heading structure, keyboard-accessible navigation, and properly implemented ARIA markup. When websites fail to incorporate these requirements, screen readers cannot accurately interpret or communicate the website's content, rendering the site inaccessible to blind users.

4. Defendant, CULT GAIA, LLC, is the owner and operator of the Cult Gaia brand and its ecommerce Website, www.cultgaia.com. Through its Website, Defendant markets and sells distinctive designer clothing, handbags, footwear, accessories, and related merchandise through its retail operations and its public-facing ecommerce website, www.cultgaia.com (the "Website"). The Website allows consumers to browse product collections, review product photographs and descriptions, identify colors and sizes, determine availability, review material and care information, add merchandise to a shopping cart, and complete purchases.

5. Plaintiff visited the Website on September 15, 2026, September 16, 2026, and October 2, 2026, using NVDA and keyboard navigation. During those visits, Plaintiff sought to investigate and purchase specific merchandise sold by Defendant, including Defendant's Mara Dress in Cool Mint. Plaintiff was drawn to the dress because of its distinctive Cult Gaia design, its cool-mint color, and its suitability as a special-occasion gift. Before purchasing it, Plaintiff wanted to determine the dress's appearance, available sizes, fit, materials, care instructions, price, and availability.

6. Plaintiff also attempted to browse Defendant's men's collection because he was interested in determining what apparel and accessories Defendant offered for his own use. Plaintiff wanted to identify the available products, understand their appearance and distinguishing features, compare prices and options, and determine whether any item was available in a suitable size or configuration.

7. Plaintiff could not independently accomplish these objectives. The Website contained accessibility barriers that interfered with NVDA's ability to identify and communicate important product information and the purposes of interactive controls. Plaintiff could not reliably interpret product images, navigate among merchandise, identify all available options, or confidently operate the controls necessary to select and purchase Defendant's products.

8. The barriers did more than cause inconvenience. They prevented Plaintiff from obtaining material information concerning merchandise he genuinely desired to investigate and purchase and denied him the opportunity afforded to sighted customers to evaluate Defendant's products privately, independently, and on equal terms.

9. Plaintiff remains interested in Defendant's merchandise, including the Mara Dress in Cool Mint and suitable items offered through Defendant's men's collection. Plaintiff intends to return to the Website to obtain the information previously denied to him and to complete a purchase

if the desired merchandise remains available and suitable. He is presently deterred from doing so because he reasonably expects to encounter the same barriers unless Defendant remediates the Website.

10. Plaintiff brings this civil action on behalf of himself, and all others similarly situated to challenge Defendant's ongoing operation of an inaccessible Website in violation of Title III of the ADA, 42 U.S.C. § 12181 et seq., the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff seeks declaratory and injunctive relief requiring Defendant to remediate its Website, adopt accessibility policies, and ensure ongoing compliance with WCAG 2.1 so that blind and visually impaired individuals may independently access the goods and services Defendant offers online.

## **JURISDICTION & VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

12. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S.

Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

14. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website, www.cultgaia.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

15. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

16. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

17. Plaintiff JEFFREY PARKER is, and at all relevant times was, a resident of Bronx County, New York. Mr. Parker is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by his treating optometrist, Dr. Claudette Lomonaco, O.D., Mr. Parker suffers from Retinitis Pigmentosa, a permanent and progressive retinal disease that has caused severe and irreversible damage to his vision. Dr. Lomonaco affirms that Mr. Parker "is legally blind

due to Retinitis Pigmentosa" and that his condition meets both federal and state criteria for legal blindness. (See **Ex. A – Jeffrey Parker Medical Report**.)

18. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot visually interpret printed or digital information without assistive technology, Mr. Parker depends on businesses to design, construct, and maintain their websites in a manner that is compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, descriptive link text, and accessible navigation are essential for him to independently access digital content.

19. Defendant Cult Gaia owns, operates, maintains, and/or controls the commercial Website www.cultgaia.com, through which it advertises, displays, markets, and sells clothing, handbags, footwear, accessories, and related designer merchandise to members of the public, including consumers residing in New York.

20. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website and the goods, services, privileges, advantages, and accommodations offered through it are accessible to blind and visually impaired consumers.

21. The Website is a significant component of Defendant's retail operations. It provides consumers with access to merchandise, product descriptions, images, prices, sizes, colors, availability information, purchase controls, shopping-cart functionality, customer-service information, policies, and other services associated with Defendant's retail business.

22. Defendant offers sighted consumers the ability to independently investigate its products, compare merchandise, select product variations, review purchase terms, and complete transactions through the Website. Defendant has failed to provide Plaintiff and other blind

consumers with an equivalent opportunity to access and use those same goods and services.

23. The removal of the barriers alleged herein is readily achievable and may be accomplished through established accessibility practices, including the provision of meaningful text alternatives, programmatically determinable labels, descriptive links, properly structured headings and forms, accessible names for interactive elements, and keyboard-operable functionality.

24. Defendant's failure to provide an accessible Website has denied Plaintiff full and equal access to Defendant's merchandise and retail services and has interfered with his ability to independently evaluate and purchase the specific products in which he is interested.

## NATURE OF ACTION

25. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

26. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

27. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and

visually impaired users are unable to fully access the information, products, and services offered online.

28. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

29. Plaintiff, JEFFREY PARKER is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

30. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

31. Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

## STATEMENT OF FACTS

32. Plaintiff JEFFREY PARKER is a legally blind consumer residing in Bronx County, New York. He suffers from Retinitis Pigmentosa, a severe and progressive retinal disease that has caused permanent and irreversible damage to his vision. His treating optometrist, Dr. Claudette Lomonaco, confirms that Mr. Parker "is legally blind due to Retinitis Pigmentosa" and that his

condition meets both federal and New York State criteria for legal blindness. (See **Exhibit A**.)

33. Mr. Parker's blindness is permanent, non-episodic, and substantially limits his major life activity of sight. He cannot visually perceive product specifications, technical features, color variations, or performance attributes in physical stores. His impairment meets the criteria for legal blindness under federal and New York State standards, and he requires accommodations afforded to legally blind individuals under state and federal law.

34. As a blind consumer, Mr. Parker relies exclusively on screen-reading software — including **NVDA** — and keyboard-only navigation to browse websites, read product descriptions, compare options, and complete online purchases. Without a properly coded, screen-reader-compatible website, he cannot independently access online shopping services on equal terms with sighted consumers.

35. On September 15, 2026, Plaintiff visited Defendant's Website with the genuine intent to investigate and purchasing Defendant's Mara Dress in Cool Mint. The product was of particular interest because of its distinctive design and color and because Plaintiff considered it suitable as a special-occasion gift. Plaintiff specifically sought to determine the product's appearance, available sizes, fit, material composition, care instructions, price, and availability.

36. Plaintiff selected Defendant's Mara Dress because it was a Cult Gaia-branded design offered through Defendant's own Website. Plaintiff was not looking merely for a generic mint-colored dress available from any retailer. He wanted to investigate and, if suitable, purchase the particular design marketed by Defendant.

37. While using NVDA on the Mara Dress product page, Plaintiff attempted to confirm that he had reached the correct product, understand the visual appearance of the dress, review all of its material characteristics, identify the available sizes and options, and locate and operate the controls required to add the product to his cart.

38. Plaintiff was unable to complete those tasks independently. Product images and other visual elements were not consistently communicated through meaningful text equivalents, and certain interactive elements did not provide sufficient accessible names or descriptions to allow Plaintiff to determine their purposes confidently.

39. Plaintiff could not independently review the Terms page with the same effectiveness as a sighted visitor because accessibility defects interfered with the ability of his screen reader to communicate and navigate portions of its content and structure.

40. The WAVE review of Defendant's Terms of Use page documented seven accessibility errors. The fact that accessibility barriers appeared on the very page through which Defendant communicates purported contractual requirements further restricted Plaintiff's ability to understand the terms governing his contemplated transaction. Exhibit B

41. The barriers Plaintiff encountered were not confined to an isolated product or a single accidental defect. They appeared across materially different portions of the Website, including a women's product-detail page, the men's collection, and Defendant's Terms page.

42. Plaintiff's experiences are further corroborated by a partial SortSite accessibility review of the Website. Although the scan was stopped after reviewing approximately 27 percent of the Website, the resulting report identified 13 categories of accessibility issues across 30 pages.

43. The SortSite findings are significant because they demonstrate that accessibility deficiencies appeared repeatedly across numerous pages and templates rather than being limited to the single product page Plaintiff initially attempted to use. Exhibit C

44. Taken together, the WAVE and SortSite findings corroborate Plaintiff's personal experience that the Website contains recurring deficiencies affecting images, links, controls, forms, page structure, navigation, and the ability of screen-reading software to identify and communicate content meaningfully.

45. Plaintiff's allegations are based upon the functional barriers he experienced while using NVDA and keyboard navigation. The automated testing provides technical corroboration for those experiences and demonstrates how deficiencies in the Website's coding produced the access problems he encountered.

46. Because of those barriers, Plaintiff could not independently obtain the information required to decide whether the Mara Dress was suitable, could not meaningfully investigate Defendant's men's merchandise, could not confidently operate essential shopping controls, and could not fully review the terms governing his contemplated use of the Website and purchase.

47. These barriers denied Plaintiff the privacy, independence, and equal opportunity afforded to sighted consumers. Plaintiff was forced either to abandon his shopping objectives or seek assistance from a sighted person in order to obtain information and perform tasks that Defendant permits sighted consumers to complete independently.

48. Plaintiff remains genuinely interested in the Mara Dress in Cool Mint and in identifying suitable products offered through Defendant's men's collection. The merchandise he sought was promoted as Cult Gaia merchandise and was of interest to Plaintiff because of Defendant's particular designs, branding, and product offerings.

49. Plaintiff intends to return to the Website after it is made accessible to determine whether the Mara Dress remains available in a suitable size and whether it possesses the characteristics necessary for his contemplated purchase. He likewise intends to return to investigate Defendant's men's merchandise and purchase any product that meets his needs and preferences.

50. Plaintiff is presently deterred from returning because he reasonably expects that the same accessibility barriers will again prevent him from independently investigating and purchasing Defendant's merchandise.

51. Unless Defendant remediates the Website and adopts practices reasonably calculated

to maintain accessibility, Plaintiff will continue to be denied full and equal access to Defendant's goods and services and will face repeated injury when he returns for the concrete shopping purposes alleged herein.

52. Defendant's failure to make the Website compatible with screen-reading software and keyboard navigation excludes Plaintiff from independently using the principal digital channel through which Defendant displays, markets, and sells its merchandise.

53. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to remove the accessibility barriers, make the Website fully and equally accessible to blind consumers, and adopt policies and procedures reasonably calculated to ensure continued accessibility.

**CLASS ACTION ALLEGATIONS**

54. Plaintiff JEFFREY PARKER brings this action on behalf of himself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

55. All legally blind individuals in the United States who have attempted to access and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

56. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York, who have attempted to access www.cultgaia.com and were denied equal access to the goods, services, and information offered thereon.

57. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.cultgaia.com and have been denied

equal access due to the systemic accessibility barriers confirmed by WAVE audits, and by Plaintiff's declarations, which corroborates the automated audit results and confirms that Defendant's Website contains pervasive WCAG 2.1 Level A and AA violations — including missing alternative text, empty buttons, empty links, missing form labels, broken ARIA references, inaccessible focus indicators, and nonsemantic navigation elements — that uniformly impact blind users across multiple pages and multiple visits. These barriers are not isolated anomalies but reflect a site-wide pattern of non-compliance that affects all blind consumers who attempt to access Defendant's Website, www.cultgaia.com thereby rendering the Class and Subclass sufficiently numerous for certification.

58. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

59. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal

access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

60. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

61. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

62. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

63. Plaintiff, **JEFFREY PARKER**, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

65. Defendant's Website, www.cultgaia.com is a service of a place of public

accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

66. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

67. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

68. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

69. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of

> auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

70. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.cultgaia.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

71. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
## (New York State Human Rights Law)
## (“NYSHRL”)

72. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

73. At all times relevant to this action, the New York State Human Rights Law

("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

74. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

75. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.cultgaia.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

76. Plaintiff has visited the Website, www.cultgaia.com on a number of occasions and has encountered barriers to his access that exist.

77. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

78. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

79. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in

order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

80. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

81. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

82. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

83. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

84. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

85. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

87. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

88. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

90. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

91. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

92. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

93. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.cultgaia.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

94. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

95. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

96. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id*...

97. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

98. Plaintiff, **JEFFREY PARKER.** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

99. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

100. Defendant is subject to NYCHRL because it owns and operates the Website, www.cultgaia.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

101. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

102. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

103. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

104. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

105. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

106. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

107. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

108. Plaintiff is also entitled to reasonable attorneys' fees and costs.

109. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies,

procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

110. Plaintiff, **JEFFREY PARKER**, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

111. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

112. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.

- A preliminary and permanent injunction requires Defendant to take all steps necessary to make www.cultgaia.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures.

- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law.
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel.
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
November 6, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com